**GWM CORPORATION, Appellant,**

v.

**WILSON–RILEY, INC., Appellee.**

**No. 12–82–0018–CV.**

Court of Appeals of Texas, Tyler.

Sept. 1, 1983.

Kerri Fields, Athens, for appellant.

Dan Hurst, Tyler, for appellee.

McKAY, Justice.

Appellee, Wilson-Riley, Inc., brought suit against B.J. Smithy (Smithy), individually, P & S Equipment Company (P & S), and GWM Corporation (GWM) on a sworn account for $11,334.53 plus accrued interest of $2,064.11 and attorney fees. GWM filed a sworn denial that the claims alleged and the statement of account "are not just or true in whole or in part," and that it was not indebted to appellee in any amount. The pleas of privilege of Smithy and P & S were sustained and the cause against them was transferred to Dallas County.

The parties waived a jury; trial was had before the court, and judgment was rendered that appellee recover from GWM $11,334.53, plus interest of $4,080.43, and plus $5,125.00 attorney fees (with credits if the case is not appealed).

There was no request for findings of fact and conclusions of law, and none were filed. The trial court made an oral finding dictated into the record that "Defendants herein acquiesced in the delivery of oil to be placed on the subdivisions under the circumstances in this case, to be placed to their account."

Appellant complains in its first three points that the trial court erred in admit-

ting evidence (1) of delivery of oil in question, (2) on the general contractor's apparent authority to bind appellant, and (3) of the sale of oil to the general contractor because there was no pleading to support such evidence. In point four appellant contends the trial court erred in finding that the oil was delivered because there is .no legal, competent evidence to support such finding, and in point five appellant claims the court erred in finding that appellant acquiesced in the oil charge being put on its account because the evidence is legally and factually insufficient to support such finding, and in point six that there is no legal, competent evidence to support such finding. In points seven and eight appellant complains the trial court erred in granting judgment for appellee because the evidence is legally and factually insufficient, and there is no legal competent evidence to support the finding of acquiescence of appellant to the delivery of the oil to be placed to its account with appellee.

B.J. Smithy (Smithy) in 1975 contracted with appellant to oil the streets in Tamarack subdivision on Cedar Creek Lake for the sum of $26,400, and he was paid $26,000 for labor and materials. Appellant was the developer of Tamarack and also the Willowwood-Arbolada subdivision on Cedar Creek. The two officers of appellant with whom Smithy dealt were William Folsom and Ed Hamilton.

Later, Smithy contracted with a committee representing the property owners in Willowwood-Arbolada subdivision to oil streets there. Smithy testified he was unable to get suitable oil elsewhere, so he called Riley at appellee's business and ordered oil to be delivered to the job and charged to appellant's account. Smithy testified that the oil was ordered with Folsom's knowledge, and the account with appellee was a continuation of Folsom's account. Smithy said he had been "turned down" by Riley for oil, but the normal course of business between him and GWM was for GWM to order and be responsible for oil.

Riley testified that Smithy called and asked for oil to be delivered to him or his company but Riley told him they were not taking any new accounts. Riley said he thought, but was not sure, that he had a conversation with Folsom or Hamilton or someone with GWM, but the authority to deliver the oil could have come from Smithy had he told Riley he had authority to order it. The oil was delivered and billed to GWM. He further said he went to Folsom and asked for payment but was put off, and that Folsom said it would be taken care of, or we are arranging to get it paid, and offered to give him a letter acknowledging he owed it. He acknowledged that GWM did not receipt for the delivery of any oil.

Folsom testified he did not remember receiving any of appellee's invoices—someone brought them and put them on his desk in the latter part of December 1975. He further said Smithy came to him for an advance draw on his work and said he needed to pay his oil bill to Riley and that was the first indication he had that appellee had not been paid for the oil. Folsom said GWM did not guarantee Smithy's oil bill but did guarantee that if he did the work he would get paid. He said the property owners raised $6,400 or $6,500 and the bill was $10,500, that Smithy did not finish the job but did only about half of it.

In further testimony Folsom said GWM and the property owners agreed Smithy should finish the project and he was given almost a year to complete it before GWM came in and did it at a cost of $5,675. He further said Smithy would not accept a check payable to him and Wilson-Riley, nor was that acceptable to Riley, and he never admitted to Riley or anyone that he would pay the oil bill owed to Wilson-Riley. He said he never allowed employees or others to order oil—that he and Hamilton had to personally order all oil, all equipment and make all purchases, and that he did not guarantee payment to Wilson-Riley for anything and the only agreement GWM had with Smithy on the Willowwood job was that he would get paid. He said Smithy said he was bringing oil from Fort Worth, and he was never told that Smithy was

going to another source or that he was unable to secure any oil, and he told Riley that invoices made out to GWM were incorrect. He further said Smithy was never paid for the work and $5,600 was still in escrow, and that GWM was going to make payments to Smithy when bill was received, and never received one for "what we owed him for the work he had done." Folsom said Riley advised him of the bill owed to Wilson-Riley for oil and requested payment, and Folsom only agreed that if he and Smithy could agree then he "would work out something" with him, and made him aware that Smithy had money coming to him and that he would "work with him on that."

Folsom said Smithy never told him that there would be no more oil deliveries because Folsom had not paid the account, and that Folsom had ordered oil from Wilson-Riley in the past and Wilson-Riley "knew not to deliver oil unless specifically ordered by Folsom or Hamilton." He further said that at the time the work was being performed on all the roads during 1975, the owner, or one of them [of the roads] was GWM Corporation.

The witness Fellhausen testified that there was a meeting of the property owners (before an actual association was formed) and the original minutes he took stated "GWM Corporation has agreed to act as escrow agent and to supervise road construction, and also to a limited guarantee to the contractor so that road work may be started." He further said no contract existed between the property owners and Smithy at the time Smithy performed the work.

The witness Hamilton, an officer of GWM, testified the agreement was between Smithy and the property owners association on the Willowwood-Arbolada job, and that GWM was guarantor that Smithy would get paid for the work, but Smithy was not paid because he never finished the work. He further said he was notified that Smithy had not paid his oil bill; the price of oil was never discussed because the oil was to be included in the agreement, and it was to be a turn-key price on everything except culverts. He said GWM had an open account with Wilson-Riley, but it was to be open only to Hamilton and Folsom, and oil billed to GWM should have been billed to Smithy.

Appellee Wilson-Riley filed a verified account suit setting out that appellant GWM (and others) was indebted to appellee in the amount of $11,334.53 plus interest of $2,064.11 and attorney's fees. This sworn account was properly denied under oath by appellant, and thus appellee was required to establish each and every item of its account by legal and competent evidence. *Boucher v. City Paint & Supply, Inc.,* 398 S.W.2d 352, 355 (Tex.Civ.App.—Tyler 1966, no writ). Appellant also filed a general denial which then put in issue all material facts in regard to appellee's allegations of goods, wares and merchandise sold and delivered to appellant. *Unit, Inc. v. Ten Egck-Shaw, Inc.,* 524 S.W.2d 330, 333 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.).

The principles above set out, however, must be considered in light of the following well-recognized rules.

■ If there was evidence improperly admitted and trial is before the court without a jury, and there is other evidence to support the judgment, it will be presumed that the improper evidence was not considered by the trial court and that the error was harmless. *Texas Employers' Ins. Ass'n. v. Polk,* 269 S.W.2d 582, 584 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.).

■ Where no findings of fact and conclusions of law are filed, and none requested, the trial court judgment implies all necessary fact-findings in support of its judgment, and in reviewing the record to determine if there is any evidence to support the judgment and its implied findings, it is proper to consider only the evidence favorable to the issue and to disregard all evidence or inferences to the contrary. *Carter v. William Sommerville and Son, Inc.,* 584 S.W.2d 274, 276 (Tex.1979).

■ And where no findings of fact or conclusions of law were filed, the trial court judgment must be upheld on any legal theo-

ry supported by the record. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978).

In reviewing the record to determine if there is any evidence to support the judgment and its implied findings, considering only the evidence favorable to the issue and disregarding all evidence or inferences to the contrary, we are constrained to uphold the judgment on any legal theory supported by the record. It appears from the record that the trial court based its judgment upon its conclusion that appellant acquiesced or agreed that the oil used on the Willowwood-Arbolada job could be charged to its account, or that it would be responsible to see that said account was paid. Considering only the evidence favorable to the judgment we find the evidence is sufficient to support the judgment of the trial court.

Accordingly, we affirm the judgment of the trial court.